## Craft v. Commonwealth.

(Decided June 9, 1925.)

### Appeal from Letcher Circuit Court.

1. Homicide—Question of Self-Defense Held for Jury.—In prosecution for murder, question of self-defense held for jury.

2. Homicide—Verdict Convicting Defendant of Manslaughter Held Not Flagrantly Against the Evidence.—In prosecution for murder, verdict convicting defendant of manslaughter held not flagrantly against the evidence.

3. Homicide—Refusal to Permit Defendant to Contradict His Own Witness Held Not Prejudicial.—In murder prosecution, refusal to permit defendant to contradict his own witness under Civil Code, section 596, as to whether he had a pistol in his hand when deceased came out of his house with his pistol held not prejudicial, where issue was whether defendant believed and had reasonable grounds to believe that he was in danger of death or great bodily harm at hands of deceased.

R. MONROE FIELDS and D. D. FIELDS & DAY for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clay—Affirming.

Appellant was convicted of manslaughter and his punishment fixed at five years' imprisonment. A reversal is asked on the ground that the verdict is flagrantly against the evidence, and that certain evidence offered by appellant was improperly rejected.

It appears that a short time before the homicide Martin Craft and Reuben Craft, brothers of appellant, went to the home of Ben Newberry. The Newberrys were preparing to eat supper and invited the Crafts to eat with them. Martin declined the invitation on the ground that he had been to supper, but Reuben accepted. While the others were eating Martin left the house, but returned in a short time. Later on some one called at the front gate for Reuben and Martin. Martin went out first, followed by Reuben and one or two of the Polly boys. In a few minutes Ben Newberry joined them. Prior to that time there had been some shooting in the road near the home of Newberry, the evidence for the Commonwealth being to the effect that five shots were fired immediately in front of the house, while some of

the witnesses for appellant say that the shooting was further away. For the Commonwealth Mrs. Newberry testified to the presence of the other persons at her home and to the fact that her husband was killed and that his pistol was brought into the house, but she did not see the difficulty. John Polly, who was asleep in the house, at the time of the difficulty, testified that about three months before appellant and Newberry engaged in an altercation over the payment of some money and both drew their pistols, but no shots were fired. After that they became friendly. He also stated that he saw the wounds on Newberry and that his clothes and flesh were powder burned. Milburn Polly testified that he saw the trouble. While they were eating supper some one called for Reuben and they went out to see what it was and found Martin and Columbus standing at the gate. As soon as Ben Newberry got through supper he came out to the gate. At that time some one shot up the creek and Columbus pulled his gun and shot four or five times and Ben asked him not to shoot in front of the gate. Columbus said, "Ain't I got a right to go up and down this creek when I please?" Ben told him that if he was going to shoot to get above the house or below it. Ben then went into the house and returned and stood for a few minutes. Columbus then walked down to the gate and asked Ben if he had any whiskey. Ben told him, "No" and Columbus just pulled his gun and shot him. Witness did not pay any attention to what Ben brought with him out of the house as he came up behind him. When shot, Ben was standing about four feet from the gate and the pistol from which the shots were fired was about two feet away. Before being shot Ben did not attempt to hurt anybody. When he fell, however, there was a gun lying in the walk. Witness did not know whether he had had it in his hand or not. On cross-examination witness stated that Ben was out on the walk when Columbus first fired and then went into the house and came out again. Before going into the house Ben said, "If you want to shoot I will just help you." Ellis Polly, who saw the difficulty, testified that when Ben came out some one shot up the grade and Columbus pulled his pistol and shot four or five times. Ben asked Columbus not to shoot around the house, but go down the road or up the road. Columbus replied that he would do as he pleased. Ben then went into the house and got his pistol. Columbus asked Ben if he had any,

liquor and Ben said, "No." What Ben was doing with the pistol at the time Columbus shot he could not tell. If Ben made any attempt to shoot he did not see it. At the time Ben had the pistol holding it against his hip. He had it up. He had the pistol that way until he got shot, but witness could not tell how it was pointed at the time.

On the other hand appellant testified that after Ben had told him to get on up the road or down it one, he went into the house, got his gun and came out with the gun cocked. Appellant told him that he did not want any trouble and Ben said, "You get on up the road or down it one." Ben walked about three steps and came up with his gun, and as he did so appellant fired two shots and killed him. The deceased brought the gun up with both hands with the gun pointing towards him and he believed deceased was going to kill him. He and deceased had had a previous difficulty, but had become friendly. At the time of the tragedy John Polly was lying on the bed asleep and Ellis Polly was not there. Prior to that time appellant had not done any of the shooting that had occurred. According to Martin Craft, after the shooting up the road Ben said, "Wait until I go back in the house and get my gun and I'll help you boys shoot." Ben went into the house and returned with his pistol cocked. After some conversation Ben came up with his pistol and Columbus fired two shots and Ben fell. According to Broas Bentley, Ben came into the house while he was in there and got his pistol. The first he heard was when Columbus said, "Ain't I got a right to go up and down the road any time I want to?" Columbus said, "Ain't none of you fellows got any liquor?" and cursed. When he said that he shot Ben. It was dark and he could not see what Ben was doing. Town Hall testified that two or three days after the homicide he met Milburn Polly and Milburn told him that when Ben went into the house he stated that he would kill that Lum Craft and also said in the same conversation that Lum beat him to it. According to Reuben Craft, deceased came out with his pistol holding it up in his hand, but he did not know what deceased was doing when the shots were fired.

The argument is that there is no contradiction in the evidence that the deceased after he first appeared on the scene made threatening remarks, went back into the house, secured his pistol, returned with it in his hand,

and advanced toward appellant. This may be conceded, but the evidence is conflicting as to whether deceased attempted to raise his pistol or made any demonstration to shoot appellant just before he was shot. Indeed there was substantial evidence that the deceased did not attempt to shoot appellant, and that appellant, after inquiring if any of the boys had any liquor, immediately fired two shots. On this showing the question of self-defense was for the jury and we are unable to say that the verdict is flagrantly against the evidence.

It appears that Reuben Craft, a witness for appellant, stated on cross-examination that to the best of his recollection appellant had a pistol in his hand before the deceased went into the house and got his pistol. Appellant was recalled and stated that he did not have a pistol in his hand before the deceased came out of his house with his pistol. He then offered to prove the same thing by Martin Craft, but Craft's evidence was excluded. The point is made that under section 596, Civil Code, appellant had a right to contradict his witness, Reuben Craft, by other evidence, and that Martin Craft's evidence was improperly excluded. Perhaps the court should have permitted Martin Craft's statement to go to the jury, but in our opinion its exclusion was not prejudicial error. The real question in the case was whether appellant believed and had reasonable grounds to believe that he was then and there in danger of death or great bodily harm at the hands of the deceased, and whether or not he had his pistol in his hand before deceased went back into the house has but little bearing on this question.

Judgment affirmed.